IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AGUSTIN RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-2978-P |
| | § | |
| CREATIVE CONCEPTS INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The Court has under consideration Certain Defendants' Motion to Transfer Venue (doc. 7). Pursuant to 28 U.S.C. § 1404(a), Defendants NPL Construction Co. ("NPL") and Ricardo Pringle ("Pringle") seek to transfer this action to the District of Nevada.[1] Plaintiff opposes the motion, which is now fully briefed and ready for ruling.[2] For the reasons that follow, the Court denies the motion.

### I. BACKGROUND

Plaintiff filed this action in a Texas state court asserting numerous claims against several defendants. (*See* Pl.'s Orig. Pet. ("Compl."), doc. 1-12.)[3] He sues all defendants for negligence,

---

[1] Nevada has only one judicial district, but holds court in various locations including Las Vegas and Carson City. 28 U.S.C. § 108.

[2] Except for the plaintiff's name, the motion and briefing are essentially identical to filings in *Martinez v. Creative Concepts, Inc.*, No. 3:12-CV-2979-P (N.D. Tex.) (filed by Martin Martinez). Pages seven and nine of both motions even refer to the plaintiff as Martin Martinez, even though that reference should be to Agustin Rodriguez in this case. Similarly, the responses to both motions erroneously cite a district court case as one decided by the Fifth Circuit Court of Appeals.

[3] Like the motion and briefing, the original petition appears identical to the one filed in *Martinez*, except for the plaintiff's name. Both petitions even erroneously use the plural "Plaintiffs" in paragraphs 144, 145, 149, and 150.

civil conspiracy, concert of action, assisting and participating, assisting and encouraging, breach of fiduciary duty, and fraud. (*See id.* ¶¶ 71-76, 107-50.) In addition, he sues Defendant Paul Schelly ("Schelly") individually for breach of contract and breach of fiduciary duty. (*See id.* ¶¶ 64-70, 77-80.) He also sues Pringle and Schelly (collectively referred to as "Attorney Defendants") individually for malpractice, negligence, and negligence per se. (*See id.* ¶¶ 59-63.) Further, he asserts breach-of-contract claims against the Creative Concepts Defendants[4] and the NPL Defendants;[5] fraudulent-inducement claims against the Creative Concepts Defendants, Schelly, and NPL; and negligent-misrepresentation claims against NPL and the Creative Concepts Defendants. (*See id.* ¶¶ 46-58; 81-106.) Lastly, he asserts that the Creative Concepts Defendants and Schelly engaged in the unauthorized practice of law and/or failed to supervise a non-attorney. (*See id.* at 151-57.)

The Creative Concepts Defendants are all located in California, NPL is located in Nevada, and Kemper and Pringle are located in Arizona. (*See id.* ¶¶ 2-10.) Despite the many claims and defendants, this action essentially centers around an alleged scheme between Plaintiff's former employer (NPL) – through its CEO (Kemper) and its attorney (Pringle) – and the other Defendants and their attorneys, including Schelly who has been disbarred. (*See id.* ¶¶ 11-14, 18.) NPL allegedly developed the scheme to avoid federal prosecution and fines while continuing to employee undocumented workers like Plaintiff. (*See id.* ¶ 11.) The scheme allegedly involved lying to the workers that NPL would sponsor them. (*See id.* ¶ 13.) Plaintiff contends that NPL ran its scam out of its

---

[4]Plaintiff identifies the Creative Concepts Defendants as: Creative Concepts, Inc.; Speidel Enterprises, Inc. d/b/a Creative Concepts; Paul Schelly; David Speidel; Elia Vallejo; and John R. Speidel. (*See* Compl. ¶ 47.)

[5]Plaintiff identifies the NPL Defendants as NPL; Pringle; and Mike Kemper, Chief Executive Officer ("CEO") of NPL. (*See* Compl. ¶ 54.)

2

offices in Las Vegas, Nevada, and Phoenix, Arizona. (*See id.* at 14.) And those offices were where "[t]he executives, attorneys, foremen and supervisors who initially planned the scheme were located." (*See id.* ¶ 15.) But NPL also had "much smaller" operations in Dallas, Texas. (*See id.*)

According to Plaintiff, federal immigration authorities advised NPL on October 11, 2007, that it had denied several employee applications for work authorization. (*See id.* ¶ 39.) Plaintiff contends that he was fired without explanation later in 2007. (*See id.* ¶ 40.) He claims that he filed his Texas action in 2012 after learning about other lawsuits filed against Creative Concepts and NPL and after discovery that his own immigration application had either not been filed or was denied. (*See id.* ¶ 41.)

Defendants removed the Texas action to this Court in August 2012 on grounds of diversity and federal question jurisdiction. (*See* Notice of Removal, doc. 1, at 1.) To date, only the NPL Defendants have appeared in this action. (*See* Original Answers, docs. 1-31, 1-32, and 1-33; Mot. Transfer, doc. 7; Mot. Dismiss, doc. 10.)

## II. RELATED LITIGATION

In December 2010, NPL removed a Nevada state-court action to the District of Nevada based on federal question jurisdiction. *See Hernandez v. Creative Concepts, Inc.*, No. 10-CV-2132-PMP-VCF (D. Nev.) (Pet. for Removal, doc. 1). Through an amended complaint in that action, thirteen plaintiffs sued Creative Concepts, Inc.; NPL; Northern Pipeline Construction Co.; Schelly, Speidel Enterprises, Inc.; and John R. Speidel. *See id.* (Pls.' First Am. Compl., doc. 1-3). They sued all defendants for fraudulent inducement and negligent misrepresentation. *See id.* (Pls.' First Am. Compl. ¶¶ 38-55). They sued all defendants except Schelly for breach of contract. *See id.* (Pls.' First Am. Compl. ¶¶ 18-27). They sued Creative Concepts, Inc.; Speidel Enterprises, Inc.; and John R.

Speidel for breach of confidential relationship. *See id.* (Pls.' First Am. Compl. ¶¶ 28-33). They sued Schelly for breach of fiduciary duty. *See id.* (Pls.' First Am. Compl. ¶¶ 34-37). The District Court denied a motion to remand the action to the Nevada state court. *See Hernandez v. Creative Concepts, Inc.*, No. 2:10-CV-2132-PMP, 2011 WL 1770928, at *9 (D. Nev. May 9, 2011). The action remains pending in the District of Nevada, Las Vegas Division.

In February 2012, Jose Martinez filed suit against Creative Concepts, Inc.; NPL; Speidel Enterprises, Inc.; John Speidel; David Speidel; Elia Vallejo; Schelly; and Pringle. *See Martinez v. Creative Concepts, Inc.*, No. 12-CV-0277-JCM-PAL (D. Nev.) (Compl., doc. 1). He sued all defendants for breach of confidential relationship, negligence, and civil RICO. *See id.* (Compl. ¶¶ 44-55, 63-68, 99-117). He sued all defendants except for Pringle for breach of contract, fraudulent inducement, and negligent misrepresentation. *See id.* (Compl. ¶¶ 31-43, 56-62, 73-98). He sued Schelly for breach of fiduciary duty. *See id.* (Compl. ¶¶ 69-72). On September 27, 2012, the District of Nevada dismissed the RICO claim and declined to exercise supplemental jurisdiction over the state law claims asserted by Martinez. *See Martinez v. Creative Concepts, Inc.*, No. 2:12-CV-277-JCM-PAL, 2012 WL 4490946, at *6 (D. Nev. Sept. 27, 2012). Despite the September 27, 2012 ruling, the case remains open in the District of Nevada, Las Vegas Division.

On November 2, 2012, Jose Martinez filed a complaint in Clark County, Nevada asserting similar non-RICO claims, as well as new claims, against the same or similar defendants in his federal action. (*See* App. Supp. Reply, doc. 24.) In February 2013, NPL and other defendants removed the state action to the District of Nevada on the basis of federal question jurisdiction premised on 29 U.S.C. § 185 and/or significant immigration issues and interests. *See Martinez v. Creative Concepts, Inc.*, No. 13-CV-0248-MMD-VCF (D. Nev.) (Pet. for Removal, doc. 1). This action remains pend-

ing in the District of Nevada, Las Vegas Division.

### III. MOTION TO TRANSFER

Defendants NPL and Pringle (collectively referred to as "Movants") seek to transfer this action to the District of Nevada. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404(a). A proper transfer under § 1404(a) avoids a "waste of time, energy, and money" and protects "litigants, witnesses, and the public against unnecessary inconvenience and expense." *Research in Motion Ltd. v. Visto Corp.*, 457 F. Supp. 2d 708, 713 (N.D. Tex. 2006).

Because all parties have not consented to transfer this action, the Court must first determine whether Plaintiff could have filed this action in the District of Nevada. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Movants contend that Plaintiff could have filed this action in that district based upon the many alleged wrongful acts that occurred in Las Vegas, Nevada. (Mot. Transfer at 5.) As added support, they also point to two "identical" prior suits against them and other defendants that were filed in the District of Nevada and remain pending there.[6] (*Id.*)

Plaintiff does not contest that he could have filed this action in the District of Nevada. (*See*, *generally*, Pl.'s Resp. at 1-8.) Based upon that fact and the substantial alleged events that occurred in that district, this Court has little difficulty in finding that Plaintiff could have properly filed this action there. *See* 28 U.S.C. § 1391(b)(2) (providing for venue in a judicial district where a substantial part of the events or omissions that led to the litigation occurred when the defendants do not

---

[6]The Court briefly discusses the two related cases and a third case in the preceding section. As shown by that discussion, the prior actions are not identical to this action. But they are very similar. And the actions, including the third one, all arise from a similar set of facts and events.

all reside in the same state).

After the Court determines that the proposed transferee district is a proper recipient, it then considers the private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947) (a *forum non conveniens* case) to determine whether the proposed transfer is in the interest of justice and would be more convenient for the parties and witnesses.[7] *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *In re Volkswagen II*]. The generally considered private concerns are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *In re Volkswagen I*]. The courts also generally consider the following public concerns: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* These concerns or factors are neither exhaustive nor exclusive. *In re Volkswagen II*, 545 F.3d at 315. And no one factor is dispositive. *Id.*

Within the § 1404(a) analysis, the plaintiff's choice of forum is not an independent factor. *See id.* at 314 n.10. That choice instead "places a significant burden on the movant to show good cause for the transfer." *Id.* This "burden reflects the appropriate deference to which the plaintiff's

---

[7]Congress enacted § 1404(a) "to permit courts to grant transfers upon a lesser showing of inconvenience" than required to dismiss an action under the common law doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). But the relevant factors remain the same. *Id.*

choice of venue is entitled." *Id.* at 315. To show good cause for a transfer, the movant "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* Absent a clear showing that the transferee venue is more convenient, courts should respect the plaintiff's choice of venue by denying the motion to transfer.[8] *Id.* A transfer is not warranted when it will merely shift the inconvenience of the chosen forum to a different party. *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 761 (N.D. Tex. 2009). The party seeking a transfer has the burden to show by a preponderance of the evidence that a transfer is appropriate. *Id.* Carrying that burden "requires a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony." *Research in Motion Ltd.*, 457 F. Supp. 2d at 713 (citation omitted). Whether to transfer an action rests within the sound discretion of the court.[9] *EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*, 705 F. Supp. 2d 560, 569 (N.D. Tex. 2010).

Movants argue that Plaintiff seeks to repeat litigation that his attorney has been litigating in the District of Nevada. They contend that counsel for Plaintiff has filed two prior actions in Nevada that assert the same claims against the same defendants as asserted in this case. While the prior actions are not identical to this action, they are substantially similar. Despite the similarities between the cases, Plaintiff opposes the requested transfer on grounds that he primarily worked in Texas;

---

[8] In the *forum non conveniens* context, a plaintiff is generally entitled to a strong presumption in favor of his chosen forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). This presumption is replaced by the burden on the movant to show good cause for a transfer in the § 1404(a) context. In the § 1404(a) context, courts err when "applying the stricter *forum non conveniens* dismissal standard and thus giving inordinate weight to the plaintiffs' choice of venue." *In re Volkswagen II*, 545 F.3d at 314-15.

[9] The Court's discretion to transfer under § 1404(a) "is broader" than the discretion to dismiss an action under the common law doctrine of *forum non conveniens*. *Norwood*, 349 U.S. at 32.

resided in the Northern District of Texas at all times relevant to this lawsuit; material meetings concerning him occurred in Dallas; specific false and misleading statements were made to him in Dallas; and he was harmed in Texas, not Nevada. (Pl.'s Resp. at 1-3.) He further argues that Movants have not carried their burden to show that this case should be transferred. (*Id.* at 3-6.)

**A. Private Interest Factors**

This case essentially arises out of same set of facts and circumstances that led Plaintiff's attorney to file actions in Nevada on behalf of other plaintiffs. Although the plaintiffs in *Hernandez* appear to be residents and employees outside of Texas, Jose Martinez worked and resided in Texas during the relevant times – just like Plaintiff here. Section 1404(a) provides discretionary authority to transfer related cases pending in different federal courts for consolidation in one court. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 291 (2008) (recognizing such authority). While pending cases in multiple jurisdictions is not an express factor for consideration, it does present a practical problem that affects the easy, expeditious, inexpensive determination of an action. In general, duplicate litigation is neither convenient for parties nor witnesses. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). To a lesser extent, the same can be said about allowing two cases involving essentially the same issues to proceed simultaneously in different districts. The fact that counsel for Plaintiff is litigating similar cases in Nevada supports transferring this action to the same federal district court.

Although modern technology renders access to some sources of proof less inconvenient, the relative ease of access to the corporate records of NPL also supports transferring this case to some

extent. *See In re Volkswagen II*, 545 F.3d at 316. NPL is located in Nevada with headquarters in Arizona. Its corporate records are located in Arizona, but have been produced in the Nevada litigation. Regardless of the production of documents that has occurred in Nevada, it appears more convenient to transport documents from Arizona to Nevada than to transport them to Texas. In no scenario, moreover, does Texas provide the best location to access original documents in this case. Movants argue that, between Nevada and Texas, the prior production makes Nevada the more convenient forum with regard to access to sources of proof. In general, a prior production may make it as easy to access documents in the place produced as the place originally stored. But in this case and the related cases, the plaintiffs retained the same attorney. And his office is in Texas. For produced documents, therefore, Texas and Nevada appear equally convenient. In any event, this factor slightly weighs in favor of transferring this action to Nevada.

Movants, however, fail to show that the witness factors, i.e., compulsory process and cost of attendance, support a transfer. They identify no non-party witnesses in their motion. Although their reply briefing includes a list of witness depositions taken or scheduled to be taken in the related *Hernandez* case, (*see* App. Supp. Reply at 12-14, doc. 24 (showing eighteen depositions in Nevada, seven in California, three in Arizona, and one in Mexico)), their briefing provides no additional details about who will be witnesses in this case. The list only provides the deponent's name, their connection to the Nevada litigation, and the date and location of the depositions.

It is obviously more convenient for witnesses to testify closer to home. *See In re Volkswagen II*, 545 F.3d at 317. The further the trial is from home, the more travel time is needed, which increases the likelihood of additional direct expenses for meals and lodging and indirect expenses such as time away from their job. *Id.* "When the distance between an existing venue for trial of a

matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204-05. Given the number of prospective witnesses outside of Texas, the cost to attend trial could support transferring this case. And, given the number of depositions in Nevada, the District of Nevada could very well provide greater availability of compulsory process to secure the attendance of witnesses even though potential non-party witnesses are located outside both Texas and Nevada. But the list of depositions does not show any deponent's residence. It instead shows the deposition locations. While the two locations could be the same, depositions do not always occur in one's state of residency. The failure to provide the residential information deprives the Court of information important to both the cost-of-attendance and the compulsory-process factors.

The courts, moreover, do not accord equal weight to all prospective witnesses. *First Preston Mgmt., Inc. v. AFR & Assocs., Inc.*, No. 3:08-CV-0690-G, 2008 WL 5136916, at *4 (N.D. Tex. Dec. 5, 2008). Twelve of the listed deponents are parties to this litigation or employees of parties who may be compelled by their employer to appear for trial. The availability of these types of witnesses do not weigh in favor of transfer. *See United States v. HCA Health Servs. of Okla., Inc.*, No. 3:09-CV-992-P, 2011 WL 4590791, at *3 (N.D. Tex. Sept. 30, 2011). Furthermore, when "key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *First Preston Mgmt., Inc.*, 2008 WL 5136916, at *4.

Twelve other listed deponents are plaintiffs in the Nevada litigation who presumably would provide testimony more favorable to Plaintiff in this action than Defendants. But neither Plaintiff nor Defendants indicate an intent to call any of them as witnesses in this case. Plaintiff only

identifies himself and one other witness, Martin Martinez, both who worked in Texas during the relevant time-period and currently reside in Texas.[10] Because no party has identified any of these plaintiffs from the Nevada litigation as witnesses to be called at trial in this case, their availability and cost of attendance do not favor transfer.

Four listed deponents are former employees of NPL – three who were deposed in Nevada and one in California. While non-party witnesses are crucial for proper consideration of the compulsory-process and cost-of-attendance factors, Movants again fail to affirmatively state that they will call any of the four deponents to testify at trial in this case. Nor do they provide the substance of the testimony. They instead state that Plaintiff's counsel is well-aware of the content of the testimony by virtue of his representation of the multiple plaintiffs in *Hernandez*. That may be true. But it does not aid Movants in carrying their burden to show the Court that these factors support a transfer. Without a specific identification of these individuals as key witnesses in this case, their availability and cost of attendance likewise do not favor transfer.

In short, Movants have not shown that there will be any compulsory process problems with any non-party witness who will be called at trial. Nor have they shown that a transfer is warranted due to costs of attendance for willing witnesses. On the other hand, access to sources of proof slightly favors transferring this action to Nevada. And the similar ongoing litigation in Nevada supports transferring this case to the District of Nevada.

---

[10] Another Texas worker, Jose Martinez, has already filed suit in Nevada. His current residency is unknown. And Plaintiff does not identify him as a witness. Although Plaintiff vaguely alludes to other witnesses in Texas, he identifies no other Texas witnesses. Unidentified potential witnesses are not considered when assessing whether to transfer an action.

**B. Public Interest Factors**

In general, the public factors do not favor transferring this action.  With respect to court congestion, Movants have not put forward any convincing argument that the District of Nevada is any more convenient than the Northern District of Texas.  Accordingly, "court congestion does not favor transfer." *United States v. HCA Health Servs. of Okla., Inc.*, No. 3:09-CV-992-P, 2011 WL 4590791, at *4 (N.D. Tex. Sept. 30, 2011).  Because Plaintiff invokes both federal and Texas law in this case, the third and fourth public factors likewise favor retention of the case. *See Mannatech, Inc. v. K.Y.C., Inc.*, No. 3:06-CV-813-P, 2006 WL 2216033, at *3 (N.D. Tex. Aug. 3, 2006).  By virtue of its location in Texas, this Court has a greater familiarity with Texas law than the District of Nevada even though that district undoubtedly has the aptitude and legal acumen to resolve issues of Texas law.  Keeping the litigation in Texas will also avoid any conflict of law problems that would arise in trying to apply Texas law to this case in the District of Nevada.

This forum, moreover, "has a significant interest in the outcome of any dispute in which a resident of this district is alleged to have suffered harm at the hands of a non-resident." *HCA Health Servs. of Okla., Inc.*, 2011 WL 4590791, at *4.  But this local-interest factor often requires the courts to weigh competing interests of multiple locales. *In re Volkswagen I*, 371 F.3d at 206.  This factor does not favor a transfer unless the local interests of the transferee district are greater than the local interests of the plaintiff's forum of choice. *See id.*  The local interests in Texas may be tempered somewhat when numerous non-residents also allegedly suffered the same or similar harm.  When alleged harm by various defendants span multiple states, the alleged harmful acts primarily occurred outside of Texas, and those acts have spawned multiple civil actions, there is less of a local interest

12

in having the matter decided in Texas.[11]

The facts of this case reduce the typically significant interests of this forum. Plaintiff in this case specifically alleges that NPL ran its scam out of Nevada and Arizona. He also concedes that the Dallas operations "were much smaller" than the operations in Nevada and elsewhere. Three similar cases, moreover, are already proceeding in Nevada with the same plaintiff's attorney. Although Plaintiff, and Martin Martinez, allegedly suffered harm in Texas and filed suit here, a similar plaintiff (Jose Martinez) twice filed suit in Nevada. Other plaintiffs who resided and worked in Nevada likewise filed a joint suit there. From the information before the Court, it appears that more individuals allegedly suffered harm in Nevada than here. The Nevada courts, furthermore, have issued significant rulings in the cases pending before them. They are well-versed in the facts of these similar cases. And, although the legal issues may differ in some respects, substantial overlap exists. The various cases all arise out of the same alleged scheme or scam. They all arise out of the same set of operative facts even though there may be particular facts that are peculiar to only specific plaintiffs. In light of all of these facts, Movants have shown that the local interests of the transferee district are greater than those in this Court. And, given the various local interests in multiple jurisdictions, this factor appears neutral at worst.

---

[11]Notably, although Plaintiff resides in Texas, he is neither a United States citizen nor a legal resident of the United States. Based on this fact, Movants argue that his choice of forum carries less weight. (*See* Reply at 4, doc. 23.) While that argument is misplaced in considering a requested transfer under § 1404(a), it does suggest that the illegal nature of Plaintiff's presence in the United States lessens the local interests of Texas. Even assuming that a plaintiff's illegal residency in a state may reduce the weight given to the local interests, the illegality of a litigant's residency does not eliminate all local interests. The chosen forum may have significant local interests notwithstanding a lack of legal residency on the part of the party bringing suit.

**C. Balancing Factors**

On balance, the eight factors do not clearly support transferring this action to the District of Nevada. "The availability and convenience of witnesses has been held to be the most significant factor in deciding a § 1404(a) motion to transfer." *United States v. HCA Health Servs. of Okla., Inc.*, No. 3:09-CV-992-P, 2011 WL 4590791, at *4 (N.D. Tex. Sept. 30, 2011). But Movants completely fail to identify key non-party witnesses or reveal the general content of their testimony. While the compulsory-process and cost-of-attendance factors could theoretically favor a transfer, Movants have simply failed to carry their burden on those factors. Courts should deny a § 1404(a) motion to transfer when "the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be." 15 Charles Alan Wright et al., Federal Practice and Procedure § 3851 (3d ed. 2013).

These two private interest factors, coupled with the three public interest factors that definitively support retention of this case, clearly outweigh the competing factors. Although similar litigation is ongoing in Nevada, the cases are at different stages and involve some different factual and legal issues. On the facts here, the similarities of the cases and issues do not trump the factors that favor retaining this case. From the information before the Court, transferring this action to the District of Nevada would simply shift the expense and inconvenience from Movants to Plaintiff.

While not every factor favors retaining this case, the factors favoring retention outweigh the ones that do not. Movants have not clearly demonstrated that a transfer is for the convenience of parties and witnesses and in the interest of justice. They have not carried their burden to show by a preponderance of the evidence that a transfer is appropriate. They have not shown good cause to

14

Case 3:12-cv-02978-P Document 27 Filed 05/30/13 Page 15 of 15 PageID 552

transfer this case to the District of Nevada, Las Vegas Division.

## IV.  CONCLUSION

For the reasons stated herein, the Court **DENIES** Certain Defendants' Motion to Transfer Venue (doc. 7).

**IT IS SO ORDERED this 30th day of May, 2013.**

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE